IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GUSTAVO UTRERA VIVEROS
and CHRISTIAN KLING, on behalf of
themselves and others similarly situated,                    OPINION and ORDER

                                                                    12-cv-129-bbc

                              Plaintiffs,

              v.

VPP GROUP, LLC and CORPORATE DEVELOPMENT, INC.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    Plaintiffs Gustavo Utrera Viveros and Christian Kling filed this lawsuit under the Fair

Labor Standards Act and state law to recover overtime pay for their work at a meat

processing plant owned and operated by defendants VPP Group, LLC and Corporate

Development, Inc.  Presently before the court are dueling motions regarding certification as

a class action or collective action.  Plaintiffs seek to certify their state law claims as a class

action under Fed. R. Civ. P. 23, dkt. #127; defendants seek to decertify the FLSA claims

that the court certified conditionally in a previous order under 29 U.S.C. § 216(b).  Dkt.

#117.

    Plaintiffs' primary claim is that defendants have violated plaintiffs' rights under both

federal and state law by paying employees for 11 hours of work each day (6 a.m. to 6 p.m.,

with two 30-minute unpaid breaks) even though employees actually are working longer hours.  (Plaintiffs also included references in their second amended complaint to alleged requirements that employees pay for their own protective equipment and the laundering of certain clothing items, dkt. #27 at ¶ 1, but plaintiffs have not sought to resolve those issues on a class wide basis.)  In particular, plaintiffs allege in their complaint that they are required to perform various work activities such as donning, doffing and cleaning equipment before 6:00 a.m., after 6:00 p.m. and during unpaid breaks.  (Plaintiffs did not include the issue of working during breaks in their second amended complaint, but defendants have not objected to including the issue now.)

I conditionally certified plaintiffs' FLSA claims because plaintiffs had alleged that all class members were required to perform work before 6:00 a.m. and after 6:00 p.m. as a matter of course and were not being paid for that work.  However, defendants have adduced evidence that the situation is not so cut and dry.  In particular, because employees at the plant work on a production line, their starting and stopping times vary, so that some employees may be able to leave early while others are required to stay late, depending on their positions on the  line.  In addition, defendants say that they have an "exceptions" policy, which allows employees who work more than 11 hours on a particular day to receive additional compensation for their extra work.  Both of these factual developments suggest that the court will have to consider the individual circumstances of each class member before determining whether that class member is entitled to overtime payments, which means that liability could not be determined on a class wide basis.

Because plaintiffs have not explained how they could manage their proposed class or craft a narrower one that would address these differences, I am denying plaintiffs' motion for class certification and granting defendants' motion for decertification. Although it seems unlikely that plaintiffs can fix the problems, I will give them one more opportunity to file a renewed request for certification. In addition, I will give counsel for plaintiffs an opportunity to address the concerns about adequate representation raised in this opinion.

From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

UNDISPUTED FACTS

Defendant VPP Group, LLC is a meat packing company that operates a facility in Norwalk, Wisconsin. Defendant Corporate Development, Inc. employs the production line workers at the Norwalk plant. (Because the parties do not distinguish between the defendants for purposes of this motion, I will refer to them collectively as "defendants."). Plaintiffs Gustavo Utrera Viveros and Christian Kling work in two parts of the production area called the "kill" department and the "boning" department. Those two departments include about 60 to 65 employees who are cross-trained in various positions. Most of these employees work in multiple positions at different times.

Generally, employees in the kill department and boning department are not paid according to the times they clock in and out of work. Rather, they are paid for 11 hours of work each day, using 6:00 a.m. as the start time and 6:00 p.m. as the end time, with an hour

subtracted for two 30-minute meal breaks.  The parties refer to this method of payment as "line time" or "gang time."  (The parties say that employees clock in for attendance purposes rather than to allow defendants to track each employee's time at work.  For this reason, employees may clock in early and perform various personal activities before starting work, including eating, socializing or smoking.)

Before employees take their place on the production line in the morning, they punch their cards, walk to their locker and don their personal protective equipment.  This may include hairnets, hard hats, steel-toed boots and ear plugs, gloves, aprons, arm guards and goggles, among other things.  In addition, employees pick up their knives and scabbards.  (The parties dispute whether all of this must occur before 6:00 a.m.)

Next, employees line up for an inspection, which begins at 5:55 a.m. (The parties do not say what the inspection entails, how long the inspection takes or whether employees are required to be in line by 5:55 a.m.) Once inside the inspection room, the employees must dip their knives and scabbards in a container of sterilizer and hot water, put on a white frock and gloves and walk into the boning room.

Some time between 10:00 a.m. and 11:00 a.m., employees receive a 30-minute unpaid meal break before transitioning to the kill room.  The meal period starts when the production line in the boning room stops.  However, employees may leave for their break once they are finished with their last job task.  Because it takes approximately 20 minutes for a carcass to make it through the boning room, some employees will finish before others, which means that some employees may leave for their break before the break period officially

starts.  For example, plaintiff Kling leaves for his break 10 minutes early and some times does not return to work until 45 minutes after the break period officially ends.  Some employees have breaks shorter than 30 minutes.  Before starting work in the kill room, employees must remove, clean and store their equipment and then don different equipment for the kill room.

At 3:30 p.m. employees receive another 30-minute unpaid meal break.  (The parties dispute whether employees have to return to work at 4:00 p.m. or 4:04 p.m.)

In the kill room, it takes a carcass approximately 25 to 35 minutes to go through the production line.  At the end of the shift, employees may leave their station when they complete their task on the last carcass on the line, which means that employees leave the kill department at different times.  For example, plaintiff Viveros believes that the last carcass arrives at his station around 5:46 p.m. or 5:47 p.m.

Before going home, employees must wash their equipment and then submit to an inspection to determine that the equipment is clean.  In particular, employees walk to the appropriate area and wash their equipment with soap and water, wait in line until their equipment is inspected, walk to the locker room, drop off their dirty gloves and frocks, hang their equipment to dry and remove their work clothes.  Plaintiff Viveros believes that he is sometimes able to complete these activities before 6:00 p.m.  During the week ending April 28, 2012, Viveros swiped out between 5:55 p.m. and 5:58 p.m. each day.  During the same week, employee Abel Casterona swiped out between 5:50 p.m. and 5:53 p.m.  For the week of May 5, 2012, employee Isidoro Castorena swiped out between 5:40 p.m. and 5:47 p.m.

Other employees testified that they often work past 6:00 p.m.

If employees work more than 11 hours on a particular day, they can be paid additional allowances using their "swipe out time." Defendants call these "exceptions." Defendants' records show that 26 of the 39 opt-in plaintiffs were paid additional compensation as "exceptions" on at least one occasion between November 2011 and February 2012.

OPINION

Plaintiffs seek to certify their state law claims under Fed. R. Civ. P. 23, which imposes four requirements that all class actions must satisfy: numerosity, common questions of law or fact, typicality of claims or defenses and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, plaintiffs must meet the requirements of at least one of the types of class actions listed in Rule 23(b). Plaintiffs rely solely on Rule 23(b)(3), which requires plaintiffs to show that common questions of law or fact "predominate" over individual questions and that a class action is "superior" to other methods of adjudication.

Plaintiffs' claims under the Fair Labor Standards Act are governed by their own provision. Under 29 U.S.C. § 216(b), plaintiffs may bring a collective action "for and [o]n behalf of . . . themselves and other employees similarly situated."

Unlike plaintiffs' state law claims under Rule 23, the certification process for claims under the FLSA includes two steps. Espenscheid v. DirectSat USA, LLC, 2010 WL 2330309, *6 (W.D. Wis. June, 7, 2010); Kelly v. Bluegreen Corp., 256 F.R.D. 626, 628-89

(W.D. Wis. 2009).  At the first step, plaintiffs must make "a modest factual showing" that they are similarly situated to potential class members and that they and potential class members were "victims of a common policy or plan that violated the law." Kelly, 256 F.R.D. at 629-30.  If this showing is made, the court conditionally certifies a class and authorizes notice to potential class members so that they may opt in to the lawsuit if they choose. Austin v. CUNA Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006).  The second step occurs at the close of discovery upon a motion for decertification from the defendant.  At that point the court determines whether the plaintiffs are similarly situated in fact to those who have opted in.  Id.

In an order dated October 5, 2012, I granted plaintiffs' motion for conditional certification under § 216(b) because I concluded that plaintiffs had made a modest factual showing that they were similarly situated to others "employed at the Norwalk, Wisconsin meat processing plant since February 24, 2009, who have worked in the Boning Department in the morning and in the Kill Department in the afternoon." Dkt. #86 at 11.  In particular, because plaintiffs alleged that "all the employees are performing work before 6 a.m. and after 6 p.m. . . . and defendants do not point to any evidence that undermines that allegation," I found conditional certification to be appropriate.  Id. at 9.  However, I also stated that, "[i]t may well be that further factual development will show that any violations of the FLSA will need to be determined on an individual basis. . . .  After the parties conduct discovery, if defendants show that any differences among class members make it too difficult to decide plaintiffs' claims on a class wide basis, defendants may ask to decertify the class." Id. at 10.

7

To date, approximately 40 employees have opted into the lawsuit.

Although the language in Rule 23 and § 216(b) is not the same, the Court of Appeals for the Seventh Circuit has stated that "there isn't a good reason to have different standards for the certification of the two different types of action," so it has incorporated the requirements for Rule 23 into § 216(b). Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 772 (7th Cir. 2013). I will do the same.

In their briefs, defendants argue that plaintiffs cannot satisfy the requirements for commonality, typicality, adequacy, predominance or superiority because the facts now show that there are too many differences among the employees' claims. (Defendants do not challenge the numerosity requirement.) Although these are different requirements, many of them tend to overlap. E.g., Telephone Company of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."); Messner v. Northshore University HealthSystem, 669 F.3d 802, 814 (7th Cir. 2012) ("While similar to Rule 23(a)'s requirements for typicality and commonality, the predominance criterion is far more demanding.") (internal quotations omitted). Under Rule 23(b)(3), the ultimate question is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). I agree with defendants that at least two of the differences they identify suggest that plaintiffs' claims do not meet that standard.

The first is the employees' staggered starting and stopping times. Defendants say that some employees start work later or finish work earlier than other employees because of their

positions on the production line.  According to defendants, this means that some employees may start work *after* 6:00 a.m. or leave *before* 6:00 p.m. or may start their breaks early or finish them late.  This is a problem because it suggests that each employee's claim will have to be examined individually before it can be determined whether he is actually working more than 11 hours a day.  Harper v. Sheriff of Cook County, 581 F.3d 511, 514-15 (7th Cir. 2009) ("[C]ommon issues do not predominate over individual issues, making this case inappropriate for class disposition," if "[l]iability . . . would need to be determined on an individual basis."); Pastor v. State Farm Mutual Automobile Insurance Co., 487 F.3d 1042, 1047 (7th Cir. 2007) ("[W]hen a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment.").  As I noted in the October 5, 2012 order, "[t]he important question is whether defendants' 'line time' method of paying employees is consistently depriving employees of pay to which they are entitled under the FLSA, or, more specifically for the purpose of this motion, whether the legality of that method of payment may be determined across the class."  Dkt. #86 at 12.  If the line time method of payment affects employees differently depending on their place in the production line, it will be impossible to determine the legality of that payment method across the class, particularly because employees are often switching positions.

Plaintiffs ignore this issue entirely in their briefs.  In their responses to defendants' proposed findings of fact, plaintiffs attempt to dispute defendants' evidence on these issues, but with varying success.  With respect to the meal breaks, plaintiffs dispute defendants'

proposed finding of fact that "[t]he actual length of the first meal period breaks varies depending on where the worker works on the boning department production line." Plts.' Resp. to Dfts.' PFOF ¶ 79, dkt. #181.  Plaintiffs state in response that "[a]ll meal periods are 30 minutes in length regardless where the worker works," but they support their dispute simply by citing generally to 26 nearly identically-worded employee declarations.  Id.  Even if I overlook plaintiffs' failure to be more specific, my review of the declarations did not uncover any discussion about the effect that an employee's position on the production line can have on the length of his break.  In any event, plaintiffs admit in other proposed findings of fact that "[t]he staggered stop times in the boning department results in workers leaving the boning department to begin their first meal break at various different times" and that plaintiff Kling leaves for his meal break 10 minutes early and may not return until 45 minutes after the break has ended.  Plts.' Resp. to Dfts.' PFOF ¶¶ 83 and 86, dkt. #181. Thus, I must treat as undisputed the fact that the time an employee has for his break can vary depending on his position on the production line.

With respect to the end of the shift, plaintiffs attempt to dispute defendants' proposed facts that employees can leave at different times depending on their position in the production line and that some class members leave before 6:00 p.m.  In response, plaintiffs say, "[p]rior to 2012 the last cow was killed at 6:00 p.m."  Plts.' Resp. to Dfts.' PFOF ¶¶ 112-17, dkt. #181.  That statement is not responsive to a proposed fact about staggered stopping times.  More important, the evidence plaintiffs cite does not support the proposition that "prior to 2012 the last cow was killed at 6:00 p.m."  Rather, plaintiffs cite

testimony from individual employees that they have been required to work past 6:00 p.m. The cited testimony does not address the time the last cow was killed or whether some class members were able to leave early. And none of the witnesses refer to what occurred "prior to 2012." (In fact, plaintiffs' suggestion that defendants made some unidentified changes in 2012 is inconsistent with plaintiffs' own proposed findings of fact, in which they allege that defendants "changed practices in 2013" (again without identifying what was changed). Plts.' PFOF ¶ 8, dkt. #132.)

Finally, even if I were to take plaintiffs' proposed fact at face value, it would create another problem that plaintiffs do not address. The proposed class includes employees who have worked in the boning and kill departments since 2009, but plaintiffs seem to be asserting that defendants have since changed their practices so that employees are no longer required to work longer hours or, at least, that it happens less often. However, plaintiffs have not moved to limit the class or taken any other actions to account for those changes, whatever they might be.

In one sentence in a brief, plaintiffs say that "we can look to the time records for punch out times to capture the end of the day unpaid work time." Plts.' Br., dkt. #180, dkt. #22. Plaintiffs do not elaborate on this point, but presumably they mean to argue that differences in the times the employees stop work at the end of the shift will not be a problem because it will be easy to determine liability and damages by looking at the times an employee punched out. The parties do not say in their proposed findings of fact whether employees are required to punch out every day or, if they are, that they have done so since

the beginning of the class period.  Even if I assume that they have, one problem with this argument is that it is undisputed that defendants do not require the class members to punch in and out for the purpose of tracking time, but only for the purpose of keeping attendance. Thus, employees may punch in well before they start work or punch out after they are finished because they are engaging in personal activities such as eating or socializing.  This is another issue that plaintiffs ignore.

With respect to the beginning of the shift, plaintiffs dispute defendants' proposed finding of fact that starting times are staggered by citing testimony that all production line employees must be fully dressed and ready to start work at 6:00 a.m. regardless of a particular employee's position on the production line.  Plts.' Resp. to Dfts.' PFOF ¶ 37, dkt. #181.  If plaintiffs are correct, it provides support for a view that the legality of defendants' payment method could be determined on a class wide basis with respect to those activities defendants require class members to perform before 6:00 a.m.   However, plaintiffs rely solely on conclusory testimony that they believe everyone must be ready to work at the same time.  They do not cite a policy that requires all employees to be ready at 6:00 a.m. and they do not cite any instances in which an employee was disciplined for failing to be ready at that time if his position on the line started later.

In any event, plaintiffs have not asked for the creation of a subclass to address this particular problem and, even if they had, they do not explain how this issue could be segregated from the others.  In other words, even if it is true that all potential class members are required to perform work before 6:00 a.m., it may be that extra time in the morning is

offset by longer breaks or an earlier stopping time, at least for some class members.

A second obstacle to class certification is defendants' evidence that employees who work more than 11 hours may seek compensation for any extra work under an "exceptions" policy. For example, defendants cite records showing that many class members were paid additional compensation between November 2011 and February 2012. If defendants offered a mechanism to employees to get paid for any extra time, this would require a review of each employee's individual circumstances to determine the extent to which he was able to take advantage of the policy.

Defendants' evidence is far from perfect. They do not cite records from other time periods and they provide no details about how the policy works in practice. That being said, plaintiffs offer little to undermine the evidence. Again, they ignore the issue in their briefs. In their responses to defendants' proposed findings of fact about the exceptions, plaintiffs say only that, "[p]rior to 2012 plaintiffs were paid according to gang time." Plts.' Resp. to Dfts.' PFOF ¶¶ 16-21, dkt. #181. However, none of the testimony plaintiffs cite addresses the exceptions policy, so I must treat defendants' evidence as undisputed.

With respect to the named plaintiffs in particular, defendants argue that Kling and Viveros cannot adequately represent the class because (1) Kling has admitted that his meal breaks may last nearly 90 minutes, only 30 of which are unpaid, while other employees have testified that they never have a full 30 minutes for their break and (2) Viveros has admitted that sometimes he is able to leave work before 6:00 p.m. while other employees testified that they always work past 6:00 p.m. Again, plaintiffs ignore this issue in their brief. In fact,

plaintiffs do not develop any argument that plaintiffs Kling and Viveros have claims that are typical of other class members. That section of their opening brief consists of nothing more than a summary of the legal standard. In their reply brief, plaintiffs add the conclusory assertion that the named plaintiffs have not been paid for all the hours they have worked in accordance with defendants' policy, but they say nothing about the specifics of the claims or the differences defendants identify.

Plaintiffs' only response in their briefs to differences identified by defendants is a conclusory statement that "[i]t is now well established that factual variations in a class action cannot defeat class certification," Plts.' Br., dkt. #180, at 20-21, citing Spoerle v. Kraft Foods Global, Inc., 253 F.R.D. 434 (W.D. Wis. 2008), and Pendlebury v. Starbucks Coffee Co., 518 F. Supp. 2d 1345 (S.D. Fla. 2007). However, plaintiffs are grossly overstating the holdings of these cases. With respect to Spoerle, 253 F.R.D. at 439-40, plaintiffs quote the statement that, "[i]n any class action for damages, no two parties will ever have exactly the same claim. If simply identifying differences between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class." However, plaintiffs omit the following sentence: "the task of a court reviewing a motion for class certification is to decide whether any differences identified are of the type that would make piecemeal litigation a superior vehicle for resolving each of the claims, or, to be more specific, whether the differences will make it impractical to resolve any significant issues regarding liability on a class wide basis." Id. at 440 (citing Mejdrech v. Met–Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003)). Similarly, plaintiffs quote a statement in

14

Pendlebury, 518 F. Supp. 2d at 1361, rejecting the view that "the class must be similar in almost all respects," but they omit the court's finding that the class members were similar in most respects and that any differences would not prevent the court from determining liability on a class wide basis.

Neither Spoerle nor Pendlebury stands for the proposition that differences among individual claims do not matter in deciding motions for class certification. They obviously do because the ultimate question in a motion brought under Rule 23(b)(3) is whether common questions predominate over individual ones.   In any event, both Spoerle and Pendlebury are readily distinguishable from this case.  The question in Pendlebury was whether certain employees had been classified improperly as exempt from the overtime requirements of the FLSA and the facts bear little resemblance to this case, so it is not instructive.  Spoerle, 253 F. Supp. 2d at 439-41, was a case about donning and doffing, but it was undisputed that all of the class members were not being paid for donning and doffing their personal protective equipment each day; the only alleged differences related to the particular pieces of equipment involved and the amount of time it took each employee to don and doff the equipment.  The court concluded that certification was appropriate because it would be possible to resolve the major issues of liability across the class; the alleged differences were relevant to damages only.  Id. at 440 (quoting Blihovde v. St. Croix County, 219 F.R.D. 607, 621 (W.D. Wis. 2003), for the proposition that "the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification").

In this case, I have not even considered defendants' evidence about potential differences in equipment and donning and doffing time because I do not think it is dispositive, for the reasons expressed in <u>Spoerle</u>.  The problem is more fundamental.  In particular, plaintiffs do not answer the basic question of how liability can be determined on a class wide basis in this case.

In <u>Spoerle</u>, the defendant had an express policy of not paying employees for donning and doffing, so there was a common question whether that policy was lawful.  <u>Jamie S. v. Milwaukee Public Schools</u>, 668 F.3d 481, 497-98 (7th Cir. 2012) ("[A]n illegal policy might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class."). In this case, defendants are not arguing that donning and doffing do not constitute "work" under federal and state labor laws.  Thus, the question is not whether employees *should be* paid for those activities, but whether they *are* being paid for those activities under defendants' "line time" method of payment.  Unlike the employees in <u>Spoerle</u>, plaintiffs have not identified a way in which that determination can be made jointly.   Although plaintiffs have adduced evidence that some potential class members are not being paid for donning and doffing as a result of defendants' "line time" method of payment, there is also evidence that some class members may have been paid for donning and doffing by virtue of their position on the production line or through the exceptions policy.  These differences are important because the "claims must depend upon a common contention . . . that is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Wal-</u>

Mart v. Dukes 131 S. Ct. 2541, 2551 (2011).

In sum, I agree with defendants that plaintiffs have failed to show that their claims are appropriate for class certification.  Regardless whether one views the problem as the absence of a common question of law or fact, that the named plaintiffs are not adequate representatives with claims typical of the class, that common questions do not predominate or that a class action is not a superior method of adjudication, plaintiffs have failed to explain how to overcome the differences among the potential class members' claims.

It might be possible to make changes to the class in order to address the concerns identified in this opinion, but even if it were, another matter counsels against class certification in this case.  Under Fed. R. Civ. P. 23(g), the court may not appoint class counsel without a finding that counsel is adequate.  The court must consider various factors, including counsel's work on the case to date, their experience in handling similar cases, their knowledge of the law, their resources and "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1).

In this case, the law firm of Arellano and Phebus, S.C. seeks to represent the class. In support of that request, counsel submitted a conclusory declaration in which they state that they have the "expertise, ability and resources to adequately represent the class," dkt. #133 at ¶ 3, but my own review of the evidence calls that assertion into doubt.   With respect to counsel's work on this case, I need look no further than counsel's handling of the current motions before the court.  As noted above, counsel ignored many of the important issues in their briefs and responded to many proposed findings of fact with the same list of

17

citations that did not support the proposition for which they were cited.  As a general rule, counsel simply glossed over the differences between the potential class members and attempted to refute defendants' arguments with conclusory statements.  They relied primarily on 26 employee declarations that appear to be identical and do not address the particular circumstances of any individual employee.   Dkt. ##144-69. Some of the employees, such as the named plaintiffs, later provided testimony that was inconsistent with the declarations.  Particularly because the signed declarations are in English and counsel suggests that the declarants' primary language is Spanish, dkt. #133 at ¶ 2, this raises a question about the extent to which the declarants had fully considered what they were signing.  (Counsel represented that they translated the declarations for the employees, id., but counsel does not suggest that any of the employees wrote their own declarations or even provided information for drafting them.)   At the least, the similar nature of the declarations and the low quality of the briefs and proposed findings of fact suggest that counsel are not properly equipped to prosecute this case as a class action.

Counsel's performance at previous stages of the case raise concerns as well.  A few examples are:

- counsel failed to obtain consent forms from the two named plaintiffs until after defendants notified counsel of the deficiency, dkt. ##99, 101-02, even though the requirement is clearly established in this circuit,  Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir. 2004), potentially causing the named plaintiffs to forfeit a substantial amount of damages as a result of the running of the statute of limitations;

- counsel originally proposed a class definition that included all production employees at the meat processing plant, even though it was

undisputed that many employees were not paid using the "line time" compensation policy that plaintiffs are challenging in this case, dkt. #86 at 7; after defendants objected to the definition, counsel filed an untimely motion to amend the definition without seeking leave of court, dkt. #82;

- counsel filed an amended complaint a month after the deadline for doing so without filing a motion for leave to amend or acknowledging that their complaint was untimely, dkt. #30;

- counsel failed to submit a proposed class notice with their motion for conditional certification, dkt. #86 at 11; they later copied a class notice from a previous lawsuit in this court without correcting problems the court had identified previously, dkt. #91 at 1-2.

Unfortunately, previous cases filed by the same counsel raise concerns as well. For example, both of the two recent class actions counsel filed in this court turned out poorly. In Bauer v. Kraft Foods Global, Inc., 11-cv-15-bbc (W.D. Wis.), another class action on behalf of employees, I granted the defendant's motion for summary judgment and its motion for attorney fees after concluding that counsel "lacked any factual support for their position and included in their original complaint hundreds of individuals who had no plausible claim to relief." Dkt. #64 at 1-2.   Before dismissing the case, I had raised numerous questions about the proposed class that are similar to the problems in this case. E.g., dkt. ##29 and 36.  In Lopez v. Sears, Roebuck & Co., 11-cv-728-bbc (W.D. Wis.), I decertified a class action in another labor law case because counsel were unable to identify a method for managing the class, despite having multiple opportunities to do so.  Dkt. #75.  This is noteworthy because it put counsel on notice of the type of showing they would be required to be made in future cases, but it seemed to have no effect on how counsel approached this case.  In addition, as in this case and Bauer, counsel proposed a class definition that was

19

obviously unworkable.  Dkt. #56.  These cases and others show a pattern of counsel's failure to address issues adequately and call into question counsel's knowledge of the law and their ability to adequately represent a class.  For instance, in <u>Crowell v. State of Wisconsin Board of Regents</u>, 12-cv-295-wmc (W.D. Wis.), the court criticized counsel for failing to "differentiate between [their] arguments related to [their client's various] claims, leaving unclear what specific conduct [they] conside[r] to be the basis of each of [their client's] three claims"; in <u>Estate of Miller v. Foods Global, Inc.</u>, 11-cv-850-bbc (W.D. Wis.), the court noted counsel's failure to respond to an argument that counsel was disqualified from representing the bankruptcy estate because they had failed to obtain approval from bankruptcy court; <u>Barlow v. Kraft Foods Global, Inc.</u>, 10-cv-319 (W.D. Wis.), dkt. #56, the court criticized counsel for failing to explain the scope of the claims, attempting to assert new claims at summary judgment and relying on various kinds of inadmissible evidence.

Another concern is Victor Arellano's disciplinary history.  Earlier this year, the Wisconsin Supreme Court publicly reprimanded Arellano for professional misconduct.  <u>In the Matter of Disciplinary Proceedings against Arellano</u>, 2013 WI 24, 346 Wis. 2d 340, 827 N.W.2d 877.  (Arellano had been privately reprimanded in 2008.  <u>Id.</u> at ¶ 2.)  The court issued the public reprimand because Arellano had made misrepresentations to the Office of Lawyer Regulation in the context of an investigation in violation of SCR 22.03(6) and had solicited a client in violation of SCR 20:7.3.  <u>Id.</u> at ¶¶ 21 and 27.  In the Western District of Wisconsin, Judge William Conley considered sanctions against Arellano in <u>Blue v. International Brotherhood of Electrical Workers</u>, 09-cv-395-wmc (W.D. Wis.) after he made

improper comments during a trial in his closing arguments.  Dkt. #101.  Although these matters do not necessarily bear directly on counsel's legal abilities, a proper respect for ethical duties is obviously important in representing a class because class members have limited ability to control counsel's decisions.  <u>Creative Montessori Learning Centers v. Ashford Gear LLC</u>, 662 F.3d 913, 918 (7th Cir. 2011) ("Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification.").

With respect to the resources counsel can devote to the case, counsel says generally that the firm's resources are sufficient, dkt. #133 at ¶ 3, but they do not provide any basis for that conclusion.  In a declaration filed with this court only a few months ago, counsel averred that their firm "has carried a large financial burden in paying attorneys fees to its prior law firm, Lawton & Cates, S.C. for cases that came with the attorneys to Arellano & Phebus, S.C." and that it "would be a hardship on the law firm if it was ordered to pay" attorney fees.  <u>Bauer</u>, 01-cv-15-bbc, dkt. #71 at ¶¶ 9-10.  I am not suggesting that counsel must provide detailed financial documents, but they should provide enough information to address the tension in their two declarations.

I do not raise these concerns lightly, but courts have a duty under Rule 23 to insure that any class certified is adequately represented.  In this case, the problems I have noted are strong evidence that counsel are not in a position to provide that representation.

Although unlikely, it is possible that plaintiffs could address the concerns raised in the order about the differences in the class members' claim by presenting additional

evidence, defining the class more narrowly or making other changes, so I will give them one more opportunity to show that class certification is appropriate. Plaintiffs should focus on showing how the named plaintiffs are typical of the class and how any newly proposed class satisfies Rule 23(b)(3). In addition, because defendants did not challenge the adequacy of class counsel in their motion, I will give counsel for plaintiffs an opportunity to respond to the concerns raised by the court on that issue.


ORDER

IT IS ORDERED that

1. The motion filed by plaintiffs Gustavo Utrera Viveros and Christian Kling for class certification under Fed. R. Civ. P. 23, dkt. #127, is DENIED.

2. The motion for decertification filed by defendants VPP Group, LLC and Corporate Development, Inc., dkt. #117, is GRANTED.

3. Plaintiffs may have until August 2, 2013, to file a renewed motion for class certification that addresses the concerns raised in this order. In addition, counsel for plaintiffs may have until August 2, 2013, to address the issue of adequacy of class counsel. Defendants may have until August 12, 2013, to file a response. If plaintiffs and counsel for

plaintiffs do not respond by August 2, the case will proceed on the claims of the named plaintiffs only.

Entered this 15th day of July, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge